IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                             Case No. 2:16-cr-000174

**CHARLES YORK WALKER, JR.**

**DEFENDANT'S SENTENCING MEMORANDUM**

Comes Charles York Walker, Jr., through his counsel, Assistant Federal Public Defender Lex A. Coleman, and submits his sentencing memorandum. For the reasons set forth herein, Walker asserts that his proper advisory guideline range should be 15 to 21 months of imprisonment (TOL 10/Cat. IV), and that a sentence of 12 months and one day would be sufficient, but no greater than necessary to advance the purposes of federal sentencing enumerated in 18 U.S.C. § 3553(a)(2).

    A.  *Who is Being Sentenced by this Court*.

Charles York Walker, Jr. is a thirty-eight year-old divorced father of six children, who was born in Fort Knox, Kentucky. *See* PSR ¶ 123. His parents, Charles York Walker, Sr., and Brenda Kay Walker, were married when he was born. Walker's father was in the Army, and his family lived in Kentucky for five years, before his mother moved with her four children to Welch, West Virginia. Mrs. Walker had family there. Mr. Walker's father remained in the service and at Fort Knox. *Id.*

When Mr. Walker was eight years old, his mother moved with her four children to Columbus, Ohio. Mr. Walker's father later also moved to Columbus, Ohio, but did not reside with Mrs. Walker or any of her children. *See* PSR ¶ 124.

1

Mr. Walker continued to reside in Columbus until he left the family home at age twelve. *See* PSR ¶ 127. Mr. Walker's mother was on public assistance in West Virginia and Columbus; Charles was raised in the Alger Green public housing project, and there were occasions when the household utilities were disconnected. *See* PSR ¶ 125. Mr. Walker was raised with two younger full siblings (Marcus Walker, now age 33, and Tiffany Nicole Walker, now age 28) ,and two older maternal half siblings (Robert Padgett, now age 41, and Clinton Padgett, now age 46), along with multiple other children. *See* PSR ¶¶ 126 & 130. While Walker's mother did not use drugs or abuse alcohol, his father and cousins did. *See* PSR ¶¶ 125 & 126. Walker's father verbally and physically abused him in the home. *Id.* Walker's father also physically abused Walker's mother. *See* PSR ¶ 127. When he was eleven or twelve, Walker finally intervened to protect his mother by striking his father with an ashtray. Walker left home shortly after that incident at age twelve. *Id.* This was when Charles alternated between being homeless on the streets of Columbus, staying with different individuals, and being in juvenile custody. Once he was finally released from the juvenile justice system, Mr. Walker followed his maternal half-brother Robert Padgett to Huntington, West Virginia. *Id.* While in Huntington, Walker lived in various housing projects, hotels, and motels. *Id.* Walker subsequently lived in Charleston, West Virginia, for thirteen years, before he briefly returned to the Columbus area for three years. *See* PSR ¶ 128. In January of 2014, Mr. Walker married Brianne Shawnta Trammell in Winfield, West Virginia. The couple divorced the same year. Mr. Walker has a son from that short marriage. *See* PSR ¶ 132. Mr. Walker has five children from other prior relationships. *See* PSR ¶¶ 132, 133, 134.

While Mr. Walker has previously attended different educational institutions, he did not obtain his GED until 2000. *See* PSR ¶¶ 168-169. He obtained a certification in logistics from Columbus State University in 2013. *See* PSR ¶ 170. Throughout his life, Mr. Walker's

employment options have been limited by his being incarcerated, or only previously working nominal minimum wage jobs. That being said, however, prior to his arrest in this matter he did have stable employment in Charleston with Dem 2 Brothers. *See* PSR ¶¶ 171-173.

Mr. Walker has a history of suicide attempts (at least two in custody – one in 1997 and another in 2008), bipolar disorder, schizophrenia, and depression. He also "loves" to gamble. *See* PSR ¶¶ 151-154. Mr. Walker is currently not experiencing any suicidal ideations, and denies otherwise being symptomatic for any mania, audio, or visual delusions. Mr. Walker is currently not on any prescribed medications, and he has never received any meaningful mental health, counseling, or gambling treatment. Mr. Walker also has an extensive history of substance abuse, which started when he was twelve years old. *See* PSR ¶¶ 155-167. While cocaine is his drug of choice, *see* PSR ¶ 162, he has regularly used alcohol and marijuana to excess, and has an eight to ten year addiction to opiates. *See* PSR ¶¶ 155, 157, 160, 161 & 163. His lifelong involvement with substance abuse is consistent with his demographic, mental health, and criminal histories.

Finally, Mr. Walker does have a criminal history. *See* PSR ¶¶ 63-122. Despite his extensive inventory of arrests, however, and excepting traffic violations - Mr. Walker has a limited number of prior adult convictions consisting of marijuana possession (when he was seventeen), wanton endangerment, possession of cocaine with the intent to distribute (when he was eighteen), possession of crack, being a felon in possession of a firearm, and DUI. *See* PSR ¶¶ 70-83.

    **B.** *Sentences Available to the Court***.**

On January 26, 2017, Charles York Walker, Jr., pled guilty to an information charging him with possessing less than a gram of heroin with the intent to distribute it, in violation of 21 U.S.C. § 841(a). *See* PSR ¶¶ 6-13. Relative to that plea, this Court has now adjudged him guilty of a felony offense punishable by a term of imprisonment for up to twenty (20) years. 21 U.S.C.

§ 841(b)(1)(C). Because Mr. Walker's offense of conviction is a *Class C* felony, *see* 18 U.S.C. § 3559(a)(3), he would normally be separately sentenced to a term of supervised release (following any term of imprisonment) of no more than three years. 18 U.S.C. § 3583(b)(2). Under the Anti-Drug Abuse Act of 1986, however, supervised release terms imposed for violations of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) run for a minimum of 3 years *up to a maximum of life*. *See* PSR ¶¶ 177-179. Mr. Walker is alternately eligible for a statutory term of probation of at least 1, but no more than 5 years. *See* 18 U.S.C. §§ 3561(a) & (c)(1), and PSR ¶ 180. He can also be fined, *see* PSR ¶¶ 182-184, and will be charged a mandatory special assessment of $100. *See* PSR ¶ 183 & 18 U.S.C. § 3013.

Mr. Walker has been in custody since his arrest on July 14, 2016. Assuming he is sentenced as presently scheduled (April 20, 2017), by the time of his sentencing hearing he would have been in custody for **281 days** or for just over 9 1/3 months. Mr. Walker's pre-sentencing detention has not only failed to avail him to any form of programming, but has been particularly onerous where it has subjected him to a number of physical assaults from other inmates. *See* PSR ¶¶ 141-150. Whatever sentence is imposed, this Court should recommend that BOP give him full credit for all of time served since his arrest on July 14, 2016. Mr. Walker has no meaningful assets or valuable property, has had no income since his arrest, and does not have the ability to pay any fine[1] - such that none should be imposed. While technically eligible to pay restitution due to his offense of conviction, there are no identifiable victims and no restitution order should issue.

---

[1] *See* PSR ¶¶ 107-108.

C. *Defendant's Objections*.

1. <u>Specific Instances of Alleged Relevant Conduct – Drug Sales</u>.

Mr. Walker has objected to PSR ¶¶ 16, 17, 19, 26, 32, and 39, along with the assertions that he sold drugs to certain informants on those dates either out of his vehicle or at 816 1/2 Washington Street in Charleston, West Virginia. Mr. Walker denies selling any drugs to anyone on May 12, May 14, June 1, or July 12, 2016. The purported sales on three of those dates were run by MDENT detective Mark Lester, using a particular male informant, who is a regular drug user. The government has failed to provide *Giglio* material respecting Detective Lester (despite repeated requests from counsel), there is no corroborating video evidence, and (again) the particular informant is a habitual drug user. As for the July 12, 2016, purported sale, there is nothing beyond the female informant's claim that any drug transaction took place at a given place. Mr. Walker has similarly objected to any alleged drug transactions taking place at all along Washington Street on April 12 or 14, 2016.

The pre-sentence writer's resort to the use of a particular phone number as justifying inclusion of these alleged buys is not supported by any discovery produced by the United States. MDENT documents assert that a particular phone number was supposedly used to set up some of the buys alleged to have occurred and alleged to be relevant conduct in Mr. Walker's case. To date, however, no phone or phone records have been produced associating any referenced number with Mr. Walker at all, and no recording has been produced establishing (a) that any such number was called, or (b) that anyone speaking on it was Mr. Walker. The same is true to any so-called text messages attributed (baselessly) to Mr. Walker. So, contrary to the PSR addendum's assertions – no evidence beyond a bald assertion has been provided establishing that a particular number or test message was used to set up anything illegal or that the number/message was in fact

Mr. Walker's. As a consequence, Mr. Walker's objections on these points and paragraphs should be sustained.

    2. "China White."

MDENT reports include references to China White as proving that Mr. Walker knew he was distributing fentanyl. Without conceding that Mr. Walker distributed anything other than on June 24, 2016, his calling anything "China White" does not establish that he knew it was fentanyl. "China White" has historically been a reference to Asian produced heroin (as opposed to Mexican produced heroin). That in some markets it is now used to refer to heroin laced with fentanyl, or to fentanyl alone, does not establish that that is how Mr. Walker intended or meant to use the term. Mr. Walker does not manufacture heroin or other opiates; he has never broken it down. His contact with heroin or any undisclosed constituent parts has been principally in using it. While defendant agrees that sustaining or denying his objection to PSR paragraph 18 will not materially impact his guideline calculations, it matters to him that the Court not just accept MDENT's bald assertion that he was knowingly distributing fentanyl just because he called some dope "China White." Heroin is commonly referred to as "dog food," so the "China White" nomenclature is hardly dispositive of anything – beyond perhaps what the United States and investigating officers want it to mean in a given case.

    3. Specific Instances of Alleged Relevant Conduct – Corey Corns & Pistol-Whipping.

Mr. Walker denies pistol-whipping anyone. While acknowledging that Corns and Ennis testified before the grand jury, their testimony was contradictory at best, and the grand jury returned no charges concerning any alleged confrontation. That the United States recently came up with partial medical records lends no further credibility to anything attributed to Corns, and nothing Corns or Ennis said to the grand jury in any way associates any incident with Mr. Walker

6

to any alleged drug trafficking (i.e. the offense conduct, or any alleged relevant conduct in this case). As a consequence, the PSR has correctly not applied any enhancement for credible threats or use of violence. Nevertheless, is it also very important to Mr. Walker for the Court to understand that he did not do anything that Corns or Ennis have suggested. If allowed to remain in his PSR, inclusion of the unsubstantiated allegations will have collateral consequences with BOP, and add points for his security class and facility designations.

    4. <u>Specific Instances of Alleged Relevant Conduct – Firearms</u>.

The PSR has characterized two firearms found at 816 1/2 Washington Street as being "present" relative to any drug sales identified in the PSR, such that the two-offense level firearm enhancement should apply in Mr. Walker's case. Walker has objected to this, as even if it were established to the Court's satisfaction that any drug sales occurred at 816 1/2 Washington Street, there is absolutely no basis to conclude (a) the guns were there at the time of any purported sale, and (b) even if they were – that Mr. Walker knew they were there. Again, unless the United States has withheld material evidence it now intends to produce during his sentencing hearing, there is no GSR, no DNA, no fingerprints, or any other tangible evidence linking the guns found in a closet at 816 1/2 to Mr. Walker. No one claimed to have seen them during any alleged drug sale (although having now mentioned the point, perhaps that may change), none were depicted on any video of any drug deal, nor were any mentioned in any "investigative discovery" beyond very generalized assertions by Corns or Ennis that Mr. Walker pistol-whipped someone with a .38 caliber revolver. This is a common firearm in America, and even were Corns and Ennis to persuade this Court that a particular type of gun was involved in a particular incident with those witnesses – it still does not establish that the gun was either of the ones seized from a closet at 816 1/2 Washington Street.

Defendant is aware of what the advisory comment suggests must be shown if a firearm is "present" under U.S.S.G. § 2D1.1(b)(1). What Mr. Walker contests is what the evidence shows about something being "present" for purposes of the enhancement in his case. Mr. Walker did not possess a firearm when he was arrested. There was not one in his vehicle. There was not one in 214 Russell Street where he was residing. While officers did recover two firearms from a closet at 816 1/2 Washington Street, that apartment is leased/owned by someone else. He did not have exclusive access to the apartment. He did not have the right or authority to exclude third persons from the apartment. Most importantly, there is no reliable evidence putting either gun in Mr. Walker's hand, proving he knew they were there, or that he ever handled either gun. So, for purposes of what Mr. Walker did do, as well as any other drug deals he is alleged to have conducted – Mr. Walker asserts that neither gun was "present" such that application of the two offense level enhancement is warranted.

### D.  *Defendant's Motion for a Downward Variance Based on § 3553(a) Factors*.

Mr. Walker's personal history and characteristics are set forth in detail above. Defendant submits that both warrant imposition of a sentence at the bottom of, or even below, the applicable advisory guideline range. The nature and circumstances of Mr. Walker's offense conduct are worst case those of a small time, local street level drug dealer, and are actually more akin to that of a habitual user of narcotics distributing nominal amounts of drugs to further facilitate his addiction and continuing use of drugs. Whether based on the drugs found in his possession when arrested and the June 24, 2016, incident described in his PSR, or on all of the instances asserted in the government's version of events – nothing Mr. Walker did or is alleged to have done involved more than a nominal amount of controlled substances. Whether Mr. Walker's various factual objections

8

are sustained or not, the worst case scenario drug quantity in this matter still only triggers application of a base offense level 12.

Mr. Walker disputes allegations of any violent conduct on his part. There likewise is no evidence of any firearm being associated with or tied to Mr. Walker, or to any drug transaction alleged in Mr. Walker's indictment or asserted by the government to be relevant conduct in Mr. Walker's case. There is no forensic evidence putting any gun in Mr. Walker's hand (i.e. no GSR, no DNA, no latent fingerprints – all of which the government has had plenty of time to test for and obtain). Likewise, no assertion is made in any audio/video recording, in any police incident report, or any grand jury testimony respecting any alleged sale of drugs that a gun was present or involved in a given drug transaction. The fact two firearms were seized on July 14, 2016, from a house where Mr. Walker was not present at the time the firearms were found, in no way establishes that either gun was present on the premises at any time a drug transaction was alleged to have previously occurred. So in substance, the nature and circumstances of Mr. Walker's offense, as is the case with his personal history and characteristics, both support a sentence at the bottom of, if not below, the correctly calculated advisory guideline range.

The seriousness of the underlying offense does not require a different conclusion. Mr. Walker has been convicted of a felony offense. This status alone reflects the seriousness of his offense conduct, as has the time he has been held in custody since his arrest last summer. As a result of that arrest and Mr. Walker's continuing detention, he lost a stable job, and he lost what little property he had been able to accumulate since he was last released from prison. The prospect of additional imprisonment further underscores the seriousness of anything he has done. A sentence at the bottom of or below the correctly calculated advisory guideline range does not undermine the seriousness of Mr. Walker's offense, nor would it fail to promote respect for the

9

law, fail to act as an effective deterrent to either Mr. Walker or third parties, or fail to protect the public. Instead, even a sentence below the applicable advisory guideline range would still constitute just punishment in this matter, and be sufficient, but no greater than necessary, to advance the purposes of federal sentencing set out by § 3553(a).

### E. *Hearing Logistics*.

Defendant does not intend to call any witnesses to address the above-stated objections, so there is no proffer of witness testimony for defendant to summarize for the Court. While the government has not disclosed any intention to put on evidence and witnesses, it has apparently represented to the pre-sentence writer that it intends to do so. *See* PSR addendum. Without any such evidence, defendant would not expect his sentencing hearing to last more than a half hour. Should the government opt to come forward with certain evidence, however, defendant is in no position to reliably estimate what time would be required for the Court to hear and digest the same.

Date: April 17, 2017.  Respectfully submitted,

**CHARLES YORK WALKER**

By Counsel

**CHRISTIAN M. CAPECE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lex A. Coleman**
Lex A. Coleman, WV Bar No. 10484
Assistant Federal Public Defender
United States Courthouse
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: lex_coleman@fd.org

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                              Case No. 2:16-cr-000174

**CHARLES YORK WALKER, JR.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** has been electronically filed with the Clerk of Court this date using the CM/ECF system and served upon opposing counsel as follows:

| | |
|---|---|
| **VIA CM/ECF:** | W. Clinton Carte |
| | Assistant United States Attorney |
| | United States Courthouse, Room 4000 |
| | 300 Virginia Street East |
| | Charleston, West Virginia 25301 |
| | E-mail: clint.carte@usdoj.gov |

**DATE**: April 17, 2017        **s/ Lex A. Coleman**
                                                Lex A. Coleman, WV Bar No. 10484
                                                Assistant Federal Public Defender
                                                United States Courthouse
                                                300 Virginia Street. East, Room 3400
                                                Charleston, West Virginia  25301
                                                Telephone: (304) 347-3350
                                                Facsimile:   (304) 347-3356
                                                E-mail: lex_coleman@fd.org