**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                              Criminal No. 2:16-cr-00174

**CHARLES YORK WALKER, JR.**

### DEFENDANT'S MOTION FOR RECUSAL

Comes defendant Charles York Walker, Jr., through his undersigned counsel, pursuant to 28 U.S.C. § 455(a) & (b)(1), and moves for this Court to recuse itself from any further proceedings in his case - including but not limited to the consideration of any further pretrial motions, overseeing his trial, and if convicted, presiding over any subsequent sentencing hearing.  As grounds, Mr. Walker submits the substance and tone of this Court's June 26, 2017, Memorandum Opinion and Order (Dkt. No. 36) rejecting his guilty plea to the Information in Case No. 2:17-cr-00010 (hereinafter "Memorandum") demonstrate both an actual bias against Mr. Walker and a perceived/prospective bias that to a reasonably objective observer might prevent Mr. Walker from receiving a fair hearing, trial, or sentencing in this matter.  As further grounds for his motion, Mr. Walker submits the following:

I.    *Factual & Procedural Background*

On July 22, 2016, Mark Lester with the Metropolitan Drug Enforcement Network Team ("MDENT") filed a federal criminal complaint charging Charles York Walker, Jr., with distributing heroin on May 12, 2016, from "inside Walker's residence at 816 1/2 Washington

Street, West, Apartment B" in Charleston, West Virginia. Dkt. No. 1. "Once inside the apartment, the CI provided Mr. Walker $100.00 in exchange for .2 grams of suspected heroin." *Id.*

On July 26, 2016, U.S. Magistrate Judge Dwayne L. Tinsley found sufficient probable cause on the pending criminal complaint to order Mr. Walker to appear for further proceedings in his case. On that same date, the Court granted the United States' motion to detain Mr. Walker without bond. *See* Dkt. Nos. 12, 14. On August 15, 2016, Mr. Walker subsequently filed a notice waiving the 30 day pre-indictment period in his case. *See* Dkt. No. 15.

On September 13, 2016, Mr. Walker was indicted on three counts of distributing heroin, two counts of distributing fentanyl, and one count of being a felon in possession of a firearm. Dkt. No. 18. The indictment covered a period from April 12, 2016, to July 14, 2016. Count 1 charged Mr. Walker with distributing .237 grams of heroin for $90 on April 14, 2016. Count 2 charged Mr. Walker with distributing .134 grams of heroin for $100 on May 12, 2016. Count 3 charged Mr. Walker with distributing .11 grams of heroin for $125 on May 24, 2016. Count 4 charged Mr. Walker with distributing .071 grams of fentanyl on June 23, 2016. Count 5 charged Mr. Walker with distributing .17 grams of a heroin and furanyl fentanyl mixture for $80. Count 6 charged Mr. Walker with being a convicted felon in possession of two pistols on July 14, 2016.

On January 13, 2017, the United States filed an information charging Mr. Walker with possession with intent to distribute heroin on July 14, 2016. Dkt. No. 1, Case No. 2:17-cr-00010. On January 26, 2017, Mr. Walker entered a guilty plea to the information, and this Court ordered the U.S. Probation Office to perform a pre-presentencing investigation. Incident to Mr. Walker's guilty plea, the parties tendered a plea agreement – which the Court deferred accepting until completion of Mr. Walker's final presentence investigation report ("PSR"). Dkt. No. 5, 2:17-cr-00010.

Mr. Walker's final PSR was provided to the Court under seal on April 5, 2017. Mr. Walker's sentencing memorandum was subsequently filed on April 17, 2017 (Dkt. No. 49, Case No. 2:16-cr-00174), and April 18, 2017 (Dkt. No. 20, Case No. 2:17-cr-00010). Based on a November 28, 2016, lab report, it was determined that what Mr. Walker actually possessed on July 14, 2016, was .845 grams of a heroin and fentanyl mixture, along with 2.081 grams of cocaine powder, and a nominal amount of marijuana.

Mr. Walker's final sentencing hearing was scheduled for June 26, 2017. Dkt. No. 35, Case No. 2:17-cr-00010. On that day, as opposed to imposing a sentence, this Court issued the Memorandum rejecting Mr. Walker's plea agreement. As pertinent here, the Court's opinion recounted in detail a number of negative matters from Mr. Walker's PSR. Specifically it emphasized Mr. Walker's familiarity with the criminal justice system and "voluminous criminal history," while laundry listing each of Mr. Walker's past arrests and convictions – including a number of juvenile adjudications. The Court then concluded that Mr. Walker "mixed violence and threats of violence with his criminal drug and firearm activity" while further stating that Mr. Walker's charges involved "vicious criminal acts" that the public should have an opportunity to express its outrage at. *See* Dkt. No. 36 at 3-5 & 24-27, Case No. 02:17-cr-00010.

Note, these specific details were not just announced in open court (the Court read its twenty-eight page opinion into the record), but also made a part of the public docket. A reporter for the Charleston Gazette-Mail newspaper was present at the June 26, 2017, hearing and authored an article published and posted online the same day discussing the Court's Memorandum.[1]

---

[1] *'There is no justice in bargaining against the people's interest': Federal judge rejects drug plea*, Charleston Gazette-Mail, June 26, 2017, http://www.wvgazettemail.com/news-cops-and-courts/20170626/there-is-no-justice-in-bargaining-against-the-peoples-interest-federal-judge-rejects-drug-plea (last viewed August 1, 2017).

Pertinent portions of the article, which was subsequently picked up by the Associated Press, tracked the Memorandum – relating in extensive detail Mr. Walker's criminal history, his ongoing substance abuse, and a number of other case-specific facts (some of which have been contested), including the assertion that Mr. Walker warned a CI to be careful using the drugs he sold because some of his "other purchasers had recently overdosed." The online version of the Gazette-Mail article provided hyperlinks to both the Memorandum and the sentencing memorandum filed on Mr. Walker's behalf discussing his personal history and characteristics.

Details from the Memorandum were not just reported locally in the Gazette-Mail newspaper, on WCHS Eyewitness News,[2] or in The Register-Herald[3] newspaper, but also regionally and nationally through West Virginia Public Broadcasting,[4] the Washington Post,[5] in

---

[2] *Judge Rejects Deal of West Virginia Man Accused of Dealing Heroin*, June 29, 2017, http://wchstv.com/news/local/judge-rejects-deal-of-west-virginia-man-accused-of-dealing-heroin (last viewed August 1, 2017).

[3] *Judge Goodwin Shines Light on Criminal Justice*, The Register-Herald, July 3, 2017, http://www.register-herald.com/opinion/editorials/judge-goodwin-shines-light-on-criminal-justice/article_7b828d38-998a-5a95-9049-7f12d5fb3d67.html (last viewed August 1, 2017).

[4] *Judge Rejects Plea Deal of Man Who Allegedly Dealt Heroin*, June 28, 2017, http://wvpublic.org/post/judge-rejects-plea-deal-man-who-allegedly-dealt-heroin#stream/0 (last viewed August 1, 2017).

[5] *Federal Judge Says Plea Deals in Drug Cases Undermine Public Safety*, The Washington Post, July 3, 2017, https://www.washingtonpost.com/news/wonk/wp/2017/07/03/federal-judge-says-plea-deals-in-drug-cases-undermine-public-safety/?utm_term=.2ece7c88edc4 (last viewed August 1, 2017).

the U.S. News and World Report,[6] the ABA Journal,[7] The Washington Times,[8] and on NBC News.[9]  The original article has been followed by additional op-ed pieces in the Charleston Gazette-Mail.[10]  A Google search of the original Gazette-Mail story as of the August 9, 2017, pretrial motion deadline still produces pages and pages of results.  Of course, while there have been a number of reader comments posted on various publications, one in the Gazette-Mail on June 27, 2017, provided "Seriously this guy is still on the street!?!"  Charleston Gazette-Mail Facebook posts were more disconcerting:  "Lock him up & throw away the key or better yet, hang him to deter other dealers" (June 29, 2017), along with a graphic meme "SHOOT YOUR LOCAL HEROIN DEALER" (July 9, 2017).[11]

---

[6]  *Judge Rejects Plea Deal of Man Who Allegedly Dealt Heroin*, June 28, 2017, https://www.usnews.com/news/best-states/west-virginia/articles/2017-06-28/judge-rejects-plea-deal-of-man-who-allegedly-dealt-heroin (last viewed August 1, 2017).

[7] *Federal Judge Rejects Plea Deal in Drug Case, Says Trial Can Reveal 'Dark Details' of Opioid Crisis*, ABA Journal Online, July 6, 2017, http://www.abajournal.com/news/article/federal_judge_rejects_plea_deal_in_drug_case_saying_a_trial_can_reveal_dark/ (last viewed August 1, 2017).

[8]  *Judge Rejects Plea of Man who Allegedly Dealt Heroin*, June 28, 2017, http://www.washingtontimes.com/news/2017/jun/28/judge-rejects-plea-deal-of-man-who-allegedly-dealt/ (last viewed August 1, 2017)

[9] *Judge Stuns Court by Rejecting Defendant's Please Deal in Drug-Ravaged State*, America's Heroin Epidemic, July 6, 2017, http://www.nbcnews.com/storyline/americas-heroin-epidemic/judge-stuns-court-rejecting-defendant-s-plea-deal-drug-ravaged-n779786 (last viewed August 1, 2017).

[10]  *Daily Mail editorial:  Judge Goodwin Shines Light on Criminal Justice*, June 27, 2017, http://www.wvgazettemail.com/gazette-op-ed-commentaries/20170722/how-judges-can-fight-the-opioid-epidemic; *How Judges Can Fight the Opioid Epidemic,* July 22, 2017, http://www.wvgazettemail.com/gazette-op-ed-commentaries/20170722/how-judges-can-fight-the-opioid-epidemic; *Gazette editorial:  WV won't jail its way out of drug crisis*, August 6, 2017, http://www.wvgazettemail.com/gazette-editorials/20170806/gazette-editorial-wv-wont-jail-its-way-out-of-drug-crisis (last viewed August 6, 2017).

[11]  *See* https://www.facebook.com/charlestongazettemail/ (last viewed August 6, 2017).

II.     *Standard of Review*

The remedy of judicial recusal exists as a matter of due process to ensure the integrity of our federal courts, and the decisions they make which deprive citizens of important fundamental rights. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986); *Aiken County v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 678 (4th Cir. 1989). Judicial recusal in our federal court system is derived from an act of Congress. Specifically, 28 U.S.C. § 455 provides in pertinent part:

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

The critical question presented by § 455(a) is not whether a judge is impartial *in fact*, but "simply whether another, not knowing whether . . . the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances." *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995). Section 455(a), therefore, forbids more than actual bias, such that it is possible for facts to indicate that a judge *might* be biased so that recusal is required, even though none of those facts indicates actual bias so that recusal is required under § 455(b). Whether a given judge *might* be biased is determined using an objective standard – by asking whether the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses "all the facts and circumstances." *United States v. Sellers*, 566 F.2d 844, 887 (4th Cir. 1977) (citing H. Rep. No. 1453, 93d Cong., 2d Sess., 1974 U.S. Code Cong. & Admin. News 6351, 6355 (1974)). This standard abolished the rule that courts should resolve close questions of disqualification in favor of a judge's "duty to sit," but it also does not require a judge to recuse

himself because of "unsupported, irrational or highly tenuous speculation."  *See United States v. DeTemple*, 162 F.3d 279, 286-87 (4th Cir. 1996) (citing *In re United States*, 666 F.2d 690, 694-95 (1st Cir. 1981)).  The hypothetical reasonable outside observer is not the judge himself or a judicial colleague, but a person outside the judicial system.  *Id.* at 287.  Because a person outside the judicial system would not be a person unduly suspicious of or concerned about a trivial risk that a judge may be biased, the probability that a judge will decide a case on a basis other than the merits must be more than "trivial."  *Id.; accord United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003).

*III.    Argument*

In moving for recusal, Mr. Walker does not question that this Court is "accustomed to the process of dispassionate decision making" while remaining "keenly aware" of his "Constitutional and ethical obligations to decide matters solely on the merits."  *DeTemple*, 162 F.3d at 287.  The substance and tone of the Memorandum, however, supports findings that the Court has prejudged Mr. Walker to the point it is biased against him, and that this Court's "impartiality" with respect to Mr. Walker "might reasonably be questioned" by a well-informed observer who assesses all the facts and circumstances.  28 U.S.C. § 455(a).  This Court also has personal knowledge of matters - from both the presentence report and Mr. Walker's previous guilty plea - that will be disputed evidentiary facts at trial.  *Id.* § 455(b)(1).  These circumstances, taken separately or in combination, warrant recusal in Mr. Walker's case.

With respect to actual bias, the Memorandum plainly shows that the Court has formed a negative opinion of Mr. Walker and his character from both the nature of the charges against him and the contents of his PSR.  Through its prejudgment of Mr. Walker, the Court went so far as to justify rejecting his plea agreement so that citizens of the Southern District of West Virginia could express their outrage at his alleged vicious criminal acts.  *See* Memorandum at 25.  This is, of

course, all before any evidence or arguments have been presented through the process of a jury trial.

The Memorandum further demonstrates implicit bias under § 455(a) the same way it has demonstrated actual bias under § 455(b)(1).

That this Court rejected Mr. Walker's plea agreement is not, standing alone, grounds to recuse. Neither is the broader policy commentary contained in the Memorandum grounds to recuse. Rather, grounds for recusal reside within the exacting details chosen by the Court to negatively assess Mr. Walker's character and background. The Court collected and recounted all of the more negative portions of Mr. Walker's pre-sentence investigation report – including those factual portions to which Mr. Walker had objected – to support its conclusion that a jury trial was necessary to bring the "dark details" of his alleged offenses to light. *See* Memorandum at 3-5 & 25-27. For example, Mr. Walker had expressly disputed that he said anything on July 12, 2016, about anyone overdosing; that any guns found in the 816 1/2 Washington Street West residence were his; or that he pistol-whipped anyone. *See* Def.'s March 23, 2017, PSR Objections (Dkt. No. 16, Case No. 2:17-cr-00010) and Def.'s Sentencing Mem. (Dkt. No. 20, Case No. 2:17-cr-00010). Yet this Court's Memorandum treated each assertion as established fact and suggested that Mr. Walker, alone among so many other defendants, deserved a public abasement for the same.

Presentence reports in federal criminal cases are filed by the probation office electronically with the Court under seal. 18 U.S.C. § 3553(d), Fed. R. Crim. P. 32, SDWV LR Cr. P. 32.2(a) (June 8, 2017). Except in this case the Court published a number of matters from the PSR that will be inherently prejudicial to Mr. Walker at trial, and it did so incident to articulating adverse beliefs about Mr. Walker's character, his conduct, and his history with the criminal justice system.

Essentially the Court has prejudged Mr. Walker, concluding he is a bad person and one not entitled to the ordinary process of plea bargaining.

No judge reviewing pretrial motions in this matter, conducting *voir dire,* reviewing and ruling on trial objections, or instructing jurors during any trial should have already prejudged Mr. Walker based on information provided by his PSR. When the United States attempts to offer evidence purportedly demonstrating Mr. Walker's knowledge, motives, or intent that would otherwise be excluded by an evidentiary rule, the Court cannot simply forget what it has already learned through Mr. Walker's PSR. No doubt, the Court would take measures to ensure that what it now knows from the PSR would not color or taint its view of trial motions or trial objections. The Court, however, is still human and cannot be expected, objectively, to ignore or pretend that it does not know what it now already knows. More importantly, it cannot undo the opinions and perceptions of Mr. Walker it has already formed through review and contemplation of Mr. Walker's PSR, which were extensively expressed in the Memorandum.

The drug quantity involved with Mr. Walker's case is a relatively nominal amount. Nevertheless, this Court has chosen to characterize Mr. Walker's alleged offenses as "vicious criminal acts" necessitating a jury trial to "reinforce condemnation of the conduct by the public at large." Memorandum at 25, 27. Mr. Walker submits that nothing he has been charged with doing is any more or less egregious than any other violation of 21 U.S.C. § 841(a)(1).

In sum, the Court, through its Memorandum, pilloried Mr. Walker's character. As a consequence, Mr. Walker maintains the Court has demonstrated an actual bias against him that warrants recusal from his case. Alternately, Mr. Walker maintains the Court has demonstrated if not actual bias, then at least a perceived bias which would lead a reasonable third party to conclude

it might not be impartial – such that Mr. Walker will not receive a fair consideration of his case.

Either way, Mr. Walker maintains that his motion to recuse should be granted.

Date**:**  August 9, 2017    Respectfully submitted,

**CHARLES YORK WALKER, JR.**

By Counsel

**CHRISTIAN M. CAPECE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lex A. Coleman**
Lex A. Coleman, WV Bar No. 10484
Assistant Federal Public Defender
United States Courthouse, Room 3400
300 Virginia Street, East
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile:   (304) 347-3356
E-mail: lex_coleman@fd.org