IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.  Criminal No. 2:16-cr-00174

**CHARLES YORK WALKER, JR.**

## DEFENDANT'S MOTION FOR CHANGE OF VENUE

Comes defendant Charles York Walker, Jr., through his undersigned counsel, pursuant to the Due Process Clause of the Fifth Amendment and Federal Rule of Criminal Procedure 21(a), and moves for an order transferring this case to a district outside the Southern District of West Virginia.

The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury. *Skilling v. United States*, 561 U.S. 358, 377 (2010). The "theory in our [trial] system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence." *Id.* at 378 (citing *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907)). Consistent with these principles, Fed. R. Crim. P. 21(a) provides that upon defendant's motion, the court must transfer the proceeding against the defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there. *United States v. Higgs*, 353 F.3d 281, 307 (4th Cir. 2003).

Mr. Walker submits that he has been materially prejudiced and is incapable of receiving a fair trial in the Southern District of West Virginia. The substance of the Court's memorandum opinion and order rejecting his guilty plea, when coupled with the related press coverage, have

constituted sufficiently prejudicial pretrial publicity as to warrant a change of venue in his case. This is particularly true where West Virginia is "ground zero" for the current opioid epidemic.

When evaluating prejudice based on pretrial publicity, the court must take two steps. First, the court evaluates whether the publicity is so inherently prejudicial that pretrial proceedings must be presumed to be tainted. Whether such publicity has been "inherently prejudicial" necessarily depends on the circumstances of the case. *Skilling* 130 S. Ct. at 2914-15. In such a tainted case, the court should grant the defendant's request for a change in venue before jury selection begins. *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991). In making its determination of presumed prejudice, the court should consider more than just the volume of pretrial publicity. It should also consider whether the publicity is inflammatory or merely factual, whether it involves matters directly or tangentially related to the defendant's case, whether the publicity is recent, whether a change of venue would decrease the risk of juror bias, and the source of the publicity. *Id.* at 732-33. The moving defendant has the burden of establishing prejudicial pretrial publicity. *Wansley v. Slayton*, 487 F.2d 90, 93-94 (4th Cir. 1973). If the defendant cannot make such a showing, the court proceeds to the second step: voir dire. If voir dire reveals that an impartial jury cannot be impaneled, then trial court should grant the motion. *Bakker*, 925 F.2d at 732; *Wansley,* 487 F.2d at 94.

The inherent prejudice here arises from the cultural context of the Southern District of West Virginia due to the opioid epidemic, and again the manner in which this Court recently rejected Mr. Walker's plea agreement. *See* Dkt. No. 36, Case No. 2:17-cr-00010, at 3-5 & 24-27 (hereinafter "Memorandum"). Applying the factors *Bakker* says must be considered, the size of the community in which Mr. Walker's charges are alleged to have occurred is relatively small – even for a larger city in West Virginia. The various news outlets that publicized the denial of Mr.

Walker's plea agreement and the Court's memorandum opinion, however, reach all across West Virginia.[1] *See* Motion for Recusal at 3-5 (detailing the extensive and negative press coverage).

This Court's rejection of Mr. Walker's plea agreement, and the particular reasons tied to Mr. Walker's personal characteristics and criminal histories, broadcast that Mr. Walker admitted guilt to a felony drug trafficking offense. This cannot be taken back. Indeed, in rejecting Mr. Walker's plea agreement, the Court expressly encouraged both the public expression of outrage concerning his case and all "attendant media attention" by declining to proceed with the scheduled sentencing hearing in order to expose the "dark details of drug distribution" to the citizens of the Southern District of West Virginia. *See* Memorandum at 24-27. Mr. Walker's trial will be conducted roughly two months after this Court rejected his plea agreement, and the local community has been saturated with negative publicity about Mr. Walker himself as well as his alleged crimes.

Mr. Walker maintains that he cannot receive a fair trial in the Southern District of West Virginia for the very reasons this Court rejected his plea agreement *and* due to how the Court rejected his plea. Despite the absence of any alleged violence in this case, or elements involving the use, attempted use, or threatened use of physical force - Mr. Walker has been charged with what the Court has very publicly characterized as "vicious criminal acts." Memorandum at 25. Again, this Court has observed and very candidly expressed that West Virginia is ground zero for the current opioid crisis gripping the nation. As a consequence, Mr. Walker is at risk of being

---

[1] According to Wikipedia, in September 2009, The Charleston Gazette had a daily circulation of 40,671, and a Sunday circulation of 68,940. See https://en.wikipedia.org/wiki/Charleston_Gazette-Mail (last viewed August 6, 2017). This was prior to the merger of the Daily Mail and Charleston Gazette in 2015, and before the new Charleston Gazette-Mail upgraded its web page and online presence in social media. The Register-Herald has a daily circulation of over 21,000. *See* http://www.mondotimes.com/1/world/us/48/2752/6469 (last viewed August 6, 2017).

convicted solely due to the cultural context of the accusations in his case in an area where most public opinion will be shaped by the ongoing opioid crisis and the negative pretrial publicity (as opposed to the facts and circumstances of his case). Which is why venue for Mr. Walker's case should be transferred to a district outside the Southern District of West Virginia.

Date**:** August 9, 2017                               Respectfully submitted,

**CHARLES YORK WALKER, JR.**

By Counsel

**CHRISTIAN M. CAPECE**
**FEDERAL PUBLIC DEFENDER**

**s/ Lex A. Coleman**
Lex A. Coleman, WV Bar No. 10484
Assistant Federal Public Defender
United States Courthouse, Room 3400
300 Virginia Street, East
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile:   (304) 347-3356
E-mail: lex_coleman@fd.org