IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           CRIMINAL ACTION NO. 2:16-cr-00174

CHARLES YORK WALKER, JR.,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Charles York Walker, Jr.'s Motion for Compassionate Release, [ECF No. 225], filed on September 7, 2023. The Government filed its response on September 25, 2023, [ECF No. 227], and Mr. Walker replied on October 4, 2023, [ECF No. 228]. The Motion is now ripe for review. After careful consideration, the Motion is **DENIED** on the basis that Mr. Walker concedes he filed the Motion for an ancillary reason.

I.    **Background**

On November 7, 2017, Mr. Walker pled guilty to three counts as charged in the Superseding Indictment [ECF No. 95]: two counts of Distribution of a Quantity of Heroin, in violation of 21 U.S.C. § 841(a)(1), and one count of Distribution of a Quantity of Fentanyl, in violation of 21 U.S.C. § 841(a)(1). [ECF No. 129]. The following day—on November 8, 2017—a jury found Mr. Walker guilty of also being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

[ECF No. 136].

On February 1, 2018, I sentenced Mr. Walker to a term of 120 months imprisonment followed by 3 years of supervised release. [ECF No. 161]. Mr. Walker served his term of incarceration at Federal Correctional Institution Beckley ("F.C.I. Beckley"). After receiving a sentencing credit of 1,718 days under the First Step Act, Mr. Walker was released from F.C.I. Beckley on April 11, 2023, to complete the remainder of his sentence at Dismas Charities, a residential reentry center. [ECF No. 226, at 1; ECF No. 227, at 2; ECF No. 228, at 2]. While at Dismas Charities, Mr. Walker participated in available programs, life skills classes, and obtained employment. [ECF No. 227-2, at 1]. He did, however, receive several inmate discipline reports for minor infractions—e.g., leaving his dorm at two o'clock in the morning to get a snack from the communal kiosk. [ECF No. 227-2, at 2]. On August 28, 2023, he was terminated from the Dismas Charities program for "possession of any narcotic not prescribed" and "possession of anything not authorized for retention"—a cigarette lighter he claims to have forgotten to remove from his pocket after returning from work. [ECF No. 227, at 2; ECF No. 228, at 5]. Mr. Walker was then transferred to South Central Regional Jail, where "he currently awaits placement in a BOP facility." *Id.*

Mr. Walker now asks the court for compassionate release, arguing that the following constitute extraordinary and compelling reasons to grant his early release: (1) the positive steps he has taken to "rebuild his life" and "reintegrate back into society," (2) the fact that he was to be released on home confinement in August or

September 2023, and (3) his wife's ailing health. [ECF No. 225, at 1; ECF No. 228, at 4 (detailing that his "spouse has severe nerve damage in her hands and is not capable of taking care of herself")]. Mr. Walker requests that the court "amend or reduce his BOP time that he would have left if he was to have to return to time served," or, alternatively, place him "into another center or home confinement so he may continue to rebuild his life." [ECF No. 225, at 2]. In short, Mr. Walker claims to be "well capable of tak[ing] care of his self and just ask[s] this Honorable Court to allow him to do so." *Id.* at 3.

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Walker's sentence under compassionate release, I must find that Mr. Walker has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," and is not a danger to the safety of others, in addition to finding that his release is consistent with § 3553(a) factors. *See e.g.,*

*United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018).

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

I first address the threshold requirement of administrative exhaustion as applies to Mr. Walker's particular circumstances.

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf. *See id.* § 3582(c)(1)(A). Upon such a motion from BOP—or from a defendant after having "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier"—a court "may reduce the term of imprisonment . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). In this case, Mr. Walker has not indicated that he has made any such required request for the Warden to bring a motion on his behalf. However, given that Mr. Walker is currently housed at a state-run regional jail rather than a federal facility, it is unclear whether he can even make such a request to the BOP or how he would go about doing so. Indeed, even the government concedes this point. [ECF No. 227, at 7 ("[T]he Government recognizes that Defendant's temporary housing in South Central Regional Jail, a state-run facility, could have made this requirement impracticable . . . .")].

"Courts are divided not only as to whether § 3582's exhaustion requirement is jurisdictional, but also as to whether it is waivable, regardless of its classification."

Yolanda Bustillo, *Compassionate Release During Crises: Expanding Federal Court Powers*, 40 Yale L. & Pol'y Rev. 223, 241 (2021); *see also* Thomas R. Hutchison, *Compassionate Release, COVID-19, and the Dangerous Futility of the First Step Act's Administrative Exhaustion Requirement*, 25 J. Gender Race & Just. 279, 285 (2022). "If the exhaustion requirement were jurisdictional, and thus governing a 'court's adjudicatory authority,' then a defendant's failure to satisfy the condition would render a court powerless to settle the issue for lack of subject matter jurisdiction. . . . [e]ven if the parties were to consent to the court's authority" *Id.* "However, if the exhaustion requirement were a claim-processing rule, the court would retain its jurisdiction over the matter." *Id.* Our own circuit has construed the exhaustion requirement to be a non-jurisdictional claim-processing rule, and thus, waivable. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) does not plainly demonstrate that Congress imbued the so-called exhaustion requirement with jurisdictional consequences."); *United States v. Marsh*, 944 F.3d 524, 529 (4th Cir. 2019). However, when, as here, the Government has raised and relied upon the exhaustion requirement, its application is not waived. *See United States v. Oliver*, 878 F.3d 120, 123 (4th Cir. 2017) (noting that non-jurisdictional, claim-processing rules should be "rigidly applied when invoked by a litigant" (internal quotation marks omitted)).

Although the Government here conceded, as noted, that exhaustion may have been "impracticable" for Mr. Walker, it nonetheless asserts that Mr. Walker's failure to exhaust is dispositive. [ECF No. 227, at 7 (arguing that because Mr. Walker failed

to satisfy the exhaustion requirement, "the Court need not address the merits of the motion")]. I agree. In his motion, Mr. Walker makes no mention of any efforts taken to comply with the exhaustion requirements of § 3582. *See* [ECF No. 225]. In fact, his motion was filed on September 7, 2023—only 14 days after his termination from Dismas Charities. *Id.* Even if he made a request to the BOP, he clearly did not wait the requisite 30 days before filing his motion. He has, therefore, failed to satisfy the exhaustion requirement.

I note, however, that I am deeply troubled by the lack of clarity for inmates housed in regional jails on how they may exhaust their administrative remedies. At a hearing on the matter, the BOP representative stated that he does not know if South Central Regional Jail has access to the administrative policies for federal inmates. He further admitted that there is no policy in place to instruct a prisoner who is in a non-BOP facility on how to file for compassionate release. This inability for inmates to access such crucial materials is disturbing.

### b) Ancillary Purpose

Furthermore, Mr. Walker conceded during the hearing on the instant motion that he filed his motion for an ancillary purpose—he was unsure how to appeal the disciplinary infractions he received at Dismas Charities. Because Mr. Walker has not made any showing to the court that he exhausted his administrative remedies by filing a request with the BOP and waiting the requisite 30 days, and because his Motion was filed for an ancillary purpose, I need not reach the merits of Mr. Walker's Motion for Compassionate Release. The Motion is **DENIED.**

### III. Conclusion

Defendant's Motion for Compassionate Release, [ECF No. 225], is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant, the United States Attorney, the United States Probation Office, and the United States Marshall.

ENTER: OCTOBER 30, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE